IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WENDY LEIGH SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12cv84-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

Plaintiff, Wendy Leigh Smith, applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*. Her disability insurance benefits application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which she found Plaintiff not disabled at any time through the date of the decision. Tr. 22. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. Tr. 1-5. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. §

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social

636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 5); Def.'s Consent to Jurisdiction (Doc. 6). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

3

experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

4

**III.    ADMINISTRATIVE PROCEEDINGS**

Plaintiff was thirty-two years old at the time of the hearing before the ALJ.  Tr. 31.  Plaintiff completed high school and has some college education.  Tr. 31.  Plaintiff's past relevant work experience was as an "emergency medical technician," "mail carrier," "retail manager," and "meter reader."  Tr. 21.  Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff "has not engaged in substantial gainful activity since February 1, 2008, the alleged onset date."  (Step 1) Tr. 14.  At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "congenital ASD status post repair, history of CVA [cerebrovascular accident], mild left hemiparesis, anemia, memory impairment, depression, anxiety, ovarian cysts, fibromyalgia, insomnia, degenerative disc disease [of the] lumbar spine with facet hypertrophy, and hypertension."  *Id*.  The ALJ then found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  *Id*.  Next, the ALJ found that Plaintiff:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except avoid heights, simple routine tasks, low stress with occasional[] decision making, judgment or changes in work setting, no work with public, moderate concentration, pace, and persistence due to pain, fatigue, side effects, and psychological problems.

Tr. 16.  The ALJ then concluded that Plaintiff "is unable to perform any past relevant work."  (Step 4) Tr. 21.  At Step 5, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and after consulting with a

VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 21. The ALJ identified the following occupations as examples: "lens inserter," "surveillance system monitor," and "assembler." Tr. 22.[5] Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 1, 2008 through the date of th[e] decision." Tr. 22.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents three issues for this court's consideration in review of the ALJ's decision: 1) whether "[t]he Commissioner's decision should be reversed because the ALJ failed to evaluate the medical opinion of Dr. Randall Jordan and supporting evidence from South Central Mental Health"; 2) whether "[t]he Commissioner's decision should be reversed, because the ALJ failed to explain the weight accorded to the medical opinions of record"; and 3) whether "[t]he Commissioner's decision should be reversed because the ALJ failed to consider the side effects of Ms. Smith's medication on her ability to work." Pl.'s Br. (Doc. 12) at 6. The court will address each argument below.

## V.   DISCUSSION

### A.   *Whether the ALJ failed to evaluate the medical opinion of Dr. Randall Jordan and supporting evidence from South Central Mental Health.*

Plaintiff argues that the ALJ erred in evaluating Dr. Jordan's medical opinion because: 1) the ALJ "failed to note that Dr. Jordan assigned a Global Assessment of

---

[5] All of these positions were in the sedentary, unskilled level.

Functioning Score of 45"; 2) "the ALJ never opined as to what weight was placed on the GAF score"; and the ALJ "ignored the medical opinions and GAF scores contained in the record from South Central Alabama Mental Health in support of Dr. Jordan's GAF score." Pl.'s Br. (Doc. 12) at 7-8.

Plaintiff relies on *McCloud v. Barnhart,* 166 F. App'x 410, 418 (11th Cir. 2006) in support of her argument. In *McCloud*, the United States Court of Appeals for the Eleventh Circuit remanded the case back to the Commissioner, in part, because the ALJ did not consider or ascribe any particular weight to two different GAF scores and erroneously stated that another GAF score reflected only moderate symptoms. *McCloud*, 166 F. App'x at 418. *McCloud* is distinguishable from the case at hand because here the ALJ did not pick and choose which GAF scores to consider nor did she misinterpret the meaning of the GAF scores. Instead, the ALJ focused her analysis on the medical record as a whole.

Upon review of the medical record, the court finds the ALJ's failure to mention Plaintiff's GAF scores does not require remand. First, while it is true the ALJ did not mention Plaintiff's GAF scores, it is also true the Social Security Administration is not bound by them.[6] Moreover, although the ALJ did not specifically refer to Plaintiff's

---

[6] The Social Security regulations provide that GAF scores have no "direct correlation to the severity requirements of the mental disorder listings." *Wind v. Barnhart,* 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (quoting Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)). Absent evidence that an examiner assigned a GAF score based on his opinion regarding a patient's ability to work, a GAF score is not entitled to any weight and does not translate to a specific finding as to functional limitations. *Ward v. Astrue,* 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008).

GAF scores in her decision, the ALJ discussed Plaintiff's mental impairments and explained how these were considered. Tr. 19-21. While the ALJ did not discuss Dr. Jordan's assignment of a GAF score of 45, she did specifically refer to and discuss Dr. Jordan's examination of Plaintiff on October 8, 2008 and the resulting medical opinion. Tr. 19. Dr. Jordan's ultimate medical opinion was that was Plaintiff's "[m]ajor limitations are more physically based," she can "function independently," and that her "ability to carry out and remember instructions of a simple, one-step nature" and "ability to respond well to coworkers, supervision, and everyday work pressures [are] not compromised." Tr. 390-92.[7] The ALJ also discussed the medical evidence from South Central Alabama Mental Health, writing as follows:

> The claimant was examined by South Central Alabama Mental Health in individual counseling form January 26, 2009 until July 31, 2009. On the

---

[7] Dr. Jordan completed a consultative examination of Plaintiff on October 8, 2008 and completed a mental examination report. Dr. Jordan assigned Plaintiff a GAF score of 45. However, Dr. Jordan also noted that Plaintiff's "Intelligence is estimated to be in the Average range at least. Concentration and processing speed is noticeably slower than premorbid estimates," and Plaintiff's "Judgment was not compromised." Tr. 391. Dr. Jordan also opined as follows:

> In terms of managing finances, the claimant can manage their financial affairs in a manner consistent with same age peers but not as well as before.
> The history of illness does not suggest historic lifetime difficulties. Day to day function was significantly better at one time based upon vocation.
> The claimant can function independently.
> In terms of vocation, the claimant's ability to carry out and remember instructions of a simple, one-step nature is not compromised, she has lost the ability to do many multi-step tasks.
> In terms of vocation, the claimant's ability to respond well to coworkers, supervision, and everyday work pressures is not compromised secondary to psychiatric issues. Major limitations are more physically based and these are driving the depressive elements. She needs continued medical and psychiatric care.

Tr. 390-92.

>most recent examination of July 31, 2009, the staff therapist noted that the claimant reported: "I think I'm better." (Exhibit 22F). Also the therapist stated the claimant had no thoughts or perceptional disturbances and no side effect from the prescribed medications (Exhibit 22F).

Tr. 20. Thus, while the ALJ did not discuss the GAF scores assigned to Plaintiff by South Central Alabama Mental Health, which ranged from 28 to 30, the ALJ did note the therapist found Plaintiff "had no thoughts or perceptional disturbances and no side effect from the prescribed medications." Tr. 20. The ALJ also noted "[i]t is noteworthy that no consultative examiner or other treating physician of record concluded that the claimant was incapable of performing some work activity because of her mental impairments." *Id.*

The ALJ concluded Plaintiff was not disabled after considering all of the evidence on Plaintiff's alleged mental impairments and the medical record does not indicate that Plaintiff had any greater limitations than found by the ALJ. Thus, the ALJ's failure to refer specifically to the GAF scores does not render the ALJ's decision unsupported by substantial evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole") (internal quotation omitted)).

### B.   Whether the ALJ failed to explain the weight accorded to the medical opinions of record.

Plaintiff argues that the ALJ erred because she "summarized some of the medical

evidence of record in her decision (Tr. 14-22). However, she failed to state the particular weight given to **any** doctor who treated or examined Ms. Smith." Pl.'s Br. (Doc. 12) at 11 (emphasis in original).

First, the court notes that Plaintiff somewhat misrepresents the ALJ's opinion when she argues that the ALJ failed to assign weight to "any doctor who treated or examined Ms. Smith." As Plaintiff herself points out, the ALJ determined that "[t]he most persuasive case evidence is from Dr. Jordan (Exhibit 12F) and Dr. Misra (Exhibit 7F) who did not find any support for disabling restriction in this case." Tr. 21. Both Dr. Jordan and Dr. Misra are examining physicians. Thus, the ALJ did explicitly assign weigh to two of Plaintiff's examining doctors.

"An ALJ's failure to state with particularity the weight given different medical opinions is reversible error." *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (citing *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). "When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Id.* (citing *Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983)).

A review of the medical evidence in this case demonstrates that any limitations placed by the doctors are consistent with the ALJ's findings that Plaintiff can perform a limited range of sedentary work with some limitations. For example, the ALJ noted that

Dr. Simpson, Ph.D. completed a Psychiatric Review Technique form in which he opined that Plaintiff: has a *mild* limitation in the areas of "restriction of activities of daily living" and "difficulties in maintaining social functioning"; *moderate* limitation in "difficulties in maintaining concentration, persistence, or pace"; and experienced *no* episodes of decompensation. Tr. 412. Dr. Simpson also completed a Mental RFC in which he opined that Plaintiff: "[i]s able to understand/remember simple instructions"; [c]an perform simple 1-2 step tasks & is able to sustain Concentration for 2 hours w/normal breaks"; and has "No significant limitations" in the areas of social interaction and adaptation. Tr. 416-18. The ALJ also noted that

> Although the claimant has multiple hospitalizations in 2008, it is clear that the claimant's heart condition was corrected in the surgery of May 8, 2008. Regarding the possible stroke in February 2008, Dr. Misra stated: Fortunately, the patient has had near complete neurologic recovery.' (Exhibit 7F) (emphasis added). With regards to the claimant's fibromyalgia, Dr. Soh stated in multiple examinations that the claimant had no joint swelling or tenderness (Exhibits 13F and 19F).

Tr. 20. Plaintiff fails to point to any medical opinion that contradicts the ALJ's findings as to the the ALJ's RFC determination. Accordingly, to the extent the ALJ's failure to state what weight she gave to the opinions was error, it was harmless. This is especially true when the RFC, as formulated, is more restrictive than the medical evidence of record and, thus, Plaintiff can show no harm.

>   C.   *Whether the ALJ failed to consider the side effects of Plaintiff's medication on her ability to work.*

Finally, Plaintiff contends that the ALJ did not consider Plaintiff's side effects on

her ability to work. Specifically, Plaintiff argues that "[w]hen asked if she suffers any side effects from her medications, Ms. Smith noted that her medications make her condition tolerable for a short period of time but do not last all day (Tr. 35). Further, she testified that her medication causes an inability to function on the daily basis (Tr. 35)." Pl.'s Br. (Doc. 12) at 13.

At the hearing, Plaintiff testified that her medications "make it tolerable for a little while. Not all day. They make it tolerable, and some days it's worse and some days it's not. Some days, even with the pain medication, I can't function." Tr. 35. Thus, Plaintiff testified that her pain interfered with her ability to function, but at no point did Plaintiff testify, as she now asserts, that "her medication causes an inability to function on the daily basis." Plaintiff's brief goes on to list the general side effects Citalopram and Clonazepam are known to cause. However, Plaintiff did not provide evidence, in the form of testimony or otherwise, that she actually suffers from any of these side effects. As Defendant points out, at the time Plaintiff filed her application, Plaintiff only reported the side effects of "bruising and bleeding" from her Plavix medication. Tr. 126. Thus, the court finds the ALJ could not have erred in not considering side effects that Plaintiff never actually alleged. *See, e.g.*, *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011) ("Mere lists of potential side effects do not establish that a claimant in fact experienced such side effects.").

Moreover, the court notes that the ALJ did consider side effects from Plaintiff's

medications, though no severe side effects were alleged. In discussing Plaintiff's side effects, the ALJ writes "[w]ith regards to the side effects of the claimant's medications, the claimant has alleged various side effects are mild and would not interfere with the claimant's ability to perform work activities in any significant manner." Tr. 20. Additionally, in posing a hypothetical to the VE, the ALJ included the following limitation: "due to pain, psychological factors, and potentially medicinal side effects would have a moderate impairment in terms of concentration persistence or pace." Tr. 45-46. The ALJ then included this limitation into his RFC limiting Plaintiff to "***moderate concentration, pace, and persistence due to*** pain, fatigue, ***side effects***, and psychological problems." Tr. 16 (emphasis added). Plaintiff does not challenge the ALJ's RFC assessment. The court cannot find error when Plaintiff does not identify from what side effects she allegedly suffers and whether these side effects would cause a greater limitation than the one already found by the ALJ.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 17th day of September, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE